UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TAYLOR MADISON and ANGIE DICKSON, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:20-CV-2516-B |
| TELESFORO AVILES, | § § § | |
| Defendant, and | § § | |
| ADT LLC, | § § | |
| Intervenor-Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs Taylor Madison and Angie Dickson's Motion to Remand (Doc. 9). In their motion, Plaintiffs challenge Defendant ADT LLC (ADT)'s removal of this case under the Class Action Fairness Act of 2005 (CAFA). Although the Court holds ADT's removal was proper, the home-state exception to CAFA applies to this case, meaning the Court must abstain from exercising jurisdiction. Accordingly, the Court **GRANTS** Plaintiffs' motion (Doc. 9) and **REMANDS** this case to the 191st Judicial District Court of Dallas County, Texas.

### I.

### BACKGROUND

This is one of a handful of cases arising from a former ADT employee's spying on individuals by accessing their security-camera footage. Plaintiff Madison alleges that she contracted with ADT to provide security for her home. Doc. 2, Def.'s App., 10. Defendant Telesforo Aviles ("Aviles"), an

employee of ADT and citizen of Texas, installed and set up the security system in Plaintiff Madison's residence. *Id.* at 11. While doing so, Aviles provided himself access to the security cameras in Plaintiff Madison's home. *Id.* Over a roughly thirty-day period following the installation, Aviles accessed the security cameras 139 times, potentially recording images of what he saw. *Id.* Aviles's spying, however, was not limited to Plaintiff Madison's household; rather, according to Plaintiffs, Aviles spied on "at least 220 of ADT's Dallas-area customers," and there are likely hundreds of other victims. *Id.* at 54.

Upon learning of Aviles's conduct, Plaintiff Madison and her mother, Plaintiff Dickson—both of whom are Texas citizens—filed a class action against Aviles in Texas state court. *See generally id.* at 6–17; *see* Doc. 1, Notice of Removal, 3. Plaintiffs seek to represent a class of "[a]ll Texas citizens or residents who experienced damages as a result of the intrusion of their seclusion by [Aviles]" and a subclass of "[a]ll Texas citizens or residents who: (1) are not customers of ADT; (2) who were present at a location monitored by an ADT video security system; (3) had a reasonable expectation of privacy at the location; and (4) experienced damages as a result of the intrusion of their seclusion by [Aviles.]" Doc. 2, Def.'s App., 53. Plaintiffs' class-action petition alleges a single claim of intrusion upon seclusion against Aviles and requests both injunctive relief and damages. *Id.* at 11–14.

After Plaintiffs filed their petition in state court, they served a discovery request on ADT, a non-party in the case at that point. *See id.* at 21 (documenting plaintiffs' motion to compel ADT's compliance with a subpoena). About one month later, ADT intervened in the case as a defendant under Texas Rule of Civil Procedure 60. *See id.* at 24. In its petition in intervention, ADT explained that it was intervening because Plaintiffs sought certification of a class harmed by Aviles, whom Plaintiffs previously alleged "was operating 'in the course and scope of his employment with ADT'

when he committed the wrongful conduct[.]" *Id.* at 25. Eight days after intervening as a defendant, ADT removed the action to this Court. *See generally* Doc. 1, Notice of Removal. ADT, a citizen of Delaware and Florida, asserts that the Court has jurisdiction over this dispute under CAFA. *Id.* at 1, 3. Plaintiffs disagree and thus filed a motion to remand (Doc. 9) this case. The motion is fully briefed, and it is now ripe for review.

## II.

## LEGAL STANDARDS

*A.   General Removal Standard*

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). The removal statute, 28 U.S.C. § 1441, authorizes defendants to remove any civil action from state court to federal district court if the district court would have original jurisdiction. 28 U.S.C. § 1441(a). Generally, "[r]emoval raises significant federalism concerns" because it effectively "deprive[s] the state court of an action properly before it." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007) (citation omitted). As a result, courts strictly construe the removal statute. *Id.* at 281–82 (citations omitted).

*B.   Removal Under CAFA*

"CAFA gives federal courts jurisdiction over certain class actions, defined in § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014) (citing, *inter alia*, 28 U.S.C. § 1332(d)(1)–(2), (5)(B)). "Congress enacted CAFA to encourage federal jurisdiction over interstate class action lawsuits of national interest." *Preston v.*

*Tenet Healthsystem Mem'l Med. Ctr.*, 485 F.3d 793, 797 (5th Cir. 2007). For this reason, there is "no antiremoval presumption" in cases invoking CAFA. *Dart Cherokee*, 574 U.S. at 89 (citations omitted). Nevertheless, the Court must "decline to exercise CAFA jurisdiction" if the home-state exception, § 1332(d)(4)(B), or the local-controversy exception, § 1332(d)(4)(A), of CAFA applies to the case. *Watson v. City of Allen*, 821 F.3d 634, 639 (5th Cir. 2016) (citations and quotation marks omitted).

### III.

### ANALYSIS

Below, the Court examines whether ADT properly removed this case under CAFA.[1] Concluding removal based on CAFA jurisdiction was proper, the Court then turns to whether a statutory exception to the exercise of CAFA jurisdiction applies. Because the Court holds that the home-state exception applies to this action, the Court must decline to exercise jurisdiction and grants Plaintiffs' motion to remand.

A. *Removal Under CAFA Was Proper.*

The Court first addresses Plaintiffs' four arguments disputing ADT's right to remove under CAFA: (1) that ADT waived its right to remove this case; (2) that ADT, as an intervening defendant, cannot remove under CAFA; (3) that the voluntary-involuntary rule prohibits removal in this case; and (4) that ADT has not satisfied CAFA's amount-in-controversy requirements. For the reasons explained below, the Court rejects these arguments and holds that ADT properly

---

[1] ADT removed this case based on CAFA jurisdiction, and it does not suggest that the Court has federal-question or diversity jurisdiction. *See generally* Doc. 1, Notice of Removal; Doc. 18, Def.'s Resp. Further, based on the facts of this case, the Court sees no basis for federal-question or diversity jurisdiction.

removed this case based on jurisdiction under CAFA.

    1.    <u>ADT did not waive its right to remove this case.</u>

As an initial matter, the parties dispute whether ADT waived its right to remove this case by evincing an intent to litigate in state court. Doc. 9-1, Pls.' Mot. Br., 12; Doc. 18, Def.'s Resp., 13. "A waiver of the right to remove must be clear and unequivocal; the right to removal is not lost by participating in state court proceedings short of seeking an adjudication on the merits." *Strong v. Green Tree Servicing, L.L.C.*, 716 F. App'x 259, 263 (5th Cir. 2017) (per curiam) (citation omitted). "For example, the filing of a motion to dismiss or for summary judgment in state court can demonstrate the requisite intent to waive the right of removal." *DT Apartment Grp., LP v. CWCapital, LLC*, 2012 WL 1555450, at *1 (N.D. Tex. May 3, 2012) (citing, *inter alia*, *Johnson v. Heublein, Inc.*, 277 F.3d 236, 244 (5th Cir. 2000)).

Plaintiffs argue that ADT waived its right to removal by: filing a motion for a protective order from a subpoena; setting a hearing on the motion; filing a petition in intervention; filing a motion to stay; and setting that motion for a hearing, too. Doc. 9-1, Pls.' Mot. Br., 12. Additionally, Plaintiffs point out that "ADT waited almost three months to intervene and remove this case after it received Plaintiffs' discovery request . . . ." *Id.*

ADT's state-court actions, however, do not show an "unequivocal" waiver of the right to remove. *See Strong*, 716 F. App'x at 263. Indeed, the Fifth Circuit has found that a defendant did not waive the right to removal "by engaging in extensive discovery in state court[.]" *Id.*; *see also Titan Aviation, LLC v. Key Equip. Fin., Inc.*, 2006 WL 3040923, at *3–4 (N.D. Tex. Oct. 26, 2006) (finding no waiver where the defendants "appeared at various hearings[,]" "made various court filings," and attended a temporary injunction hearing, where they "moved for judgment or a directed verdict").

Likewise, another district court concluded a defendant did not waive its right to removal when it intervened as a defendant in state court. *See DT Apartment*, 2012 WL 1555450, at *3 ("Even if [the defendant] was attempting to obtain some form of affirmative relief, it was not asking the state court to proceed on the merits of the case[.]"). The Court follows the same course here and holds that ADT did not waive its right to removal.

   2. <u>ADT's status as an intervening defendant does not preclude removal.</u>

Next, the Court addresses an unresolved procedural issue: whether ADT—as an intervening defendant not named in Plaintiffs' complaint—could remove under § 1453(b), CAFA's removal provision. As further explained in their reply brief, Plaintiffs contend that ADT, as an intervening party, is not a "defendant" for purposes of the CAFA removal statute, which permits removal "by any defendant. . . ." Doc. 20, Pls.' Reply, 3; 28 U.S.C. § 1453(b). Plaintiffs rely upon the Supreme Court's holding in *Home Depot U.S.A., Inc. v. Jackson* that CAFA's removal statute does not allow removal by a counterclaim defendant. 139 S. Ct. 1743, 1750 (2019). Since ADT was not a "defendant[] named by the plaintiffs in their complaint," Plaintiffs reason, it is not a "defendant" within the meaning of CAFA's removal provision. Doc. 20, Pls.' Reply, 3.

ADT, on the other hand, points out that courts routinely permit intervening parties to remove a case to federal court. Doc. 18, Def.'s Resp., 3. Because it is aligned as a defendant, ADT argues, it had the right to remove under CAFA. *Id.* at 4.

Although there is no binding authority on this issue, the Court agrees with ADT. When ADT intervened in this case, it did so as a defendant intervening under Texas Rule of Civil Procedure 60. Doc. 2, Defs.' App., 601. This is permissible under Texas law. *See, e.g.*, *Mass. Bay Ins. Co. v. Adkins*, 615 S.W.3d 580, 602 (Tex. App.—Houston [1st Dist.] 2020) ("Intervenors 'can

occupy the position of a defendant where their claims and prayer align them with the defendant and pit them directly against the plaintiff, even if no parties assert claims against them.'" (quoting *In re Ford Motor Co.*, 442 S.W.3d 265, 275 (Tex. 2014))). Further, Plaintiffs did not move to strike ADT, nor did the state court strike ADT, prior to its removal. *See* Tex. R. Civ. P. 60 (permitting an intervening party to be stricken). Thus, at the time of removal, ADT was a defendant in this civil action, so under a plain reading of § 1453(b), ADT could remove under CAFA. *Cf. Wellmark Inc. v. Chicoine*, 2019 U.S. App. LEXIS 966, at *24 (11th Cir. Jan. 10, 2019) (per curiam) (concluding a defendant with a pending motion to intervene, which had not yet been ruled upon, could not remove based on CAFA jurisdiction).

Contrary to Plaintiffs' argument, this holding does not run afoul of the Supreme Court's holding in *Home Depot*. In *Home Depot*, the Supreme Court analyzed only whether defendants to counterclaims could remove an action under § 1441(a) or § 1453(b). *See* 139 S. Ct. at 1748, 1750.[2] Thus, *Home Depot* did not address the issue here: whether an *intervening defendant* in a class action may remove under § 1453(b).

Further, in concluding that counterclaim defendants were not "defendants" for purposes of removal under § 1441(a), the *Home Depot* Court pointed out that § 1441(a) "refers to civil actions, not claims." *Id.* at 1748 (alterations incorporated and quotation marks omitted). "[B]ecause the civil action of which the district court must have original jurisdiction is the action as defined by the plaintiff's complaint," the Court explained, "'the defendant' to that action is the defendant to the

---

[2] The *Home Depot* Court interpreted the two removal statutes identically in assessing whether counterclaim defendants may remove an action. *See id.* at 1750–51. Thus, this Court discusses the *Home Depot* Court's reasoning regarding § 1441(a) despite that § 1441(a) is not at issue here.

complaint, not a party named in a counterclaim." *Id.* (alterations incorporated and quotation marks omitted). Here, whether Plaintiffs like it or not, ADT is currently a defendant to their petition—not to a counterclaim.

Finally, although the *Home Depot* Court emphasized that "original jurisdiction" depends on how an action is "defined by the plaintiff's complaint," this reasoning—taken in context—does not address whether a subsequently added defendant can remove. *See id.* at 1748; Doc. 20, Pls.' Reply, 3 (arguing "CAFA only allows defendants named by the plaintiffs in their complaint to remove"). Rather, this reasoning elaborates upon the Supreme Court's point that § 1441(a) allows removal by a defendant of the *civil action*—not a defendant of a *counterclaim*. *See id.* Here, ADT is a defendant of this civil action—not merely of a counterclaim. Thus, neither *Home Depot*'s holding nor its reasoning bars ADT from removing under CAFA.

   3. <u>The Court will not rely upon the voluntary-involuntary rule to prohibit removal.</u>

Next, the Court tackles yet another unclear issue: whether the voluntary-involuntary rule applies to this CAFA action and bars ADT's removal of this case. Under the voluntary-involuntary rule, "an action nonremovable when commenced may become removable thereafter only by the voluntary act of the plaintiff." *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 295 (5th Cir. 2019) (quoting *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 532 (5th Cir. 2006)). The rule most often arises in cases removed based upon diversity jurisdiction. *See, e.g.*, *id.* at 294–95. Further, some courts have applied the rule to cases premised upon federal-question jurisdiction. *See, e.g.*, *Nexbank, SSB v. BAC Home Loan Servicing*, LP, 2011 WL 5182118, at *2, 7 (N.D. Tex. Oct. 28, 2011) (applying the rule where the state court's dismissal of a claim gave rise to federal-question jurisdiction and the defendants removed the case thereafter). Plaintiffs urge the Court to apply the rule here because

ADT's removal is premised upon its intervention as a defendant, an act to which Plaintiffs did not consent. *See* Doc. 9-1, Pls.' Mot. Br., 6–7. But the Court is unaware of any binding authority indicating whether or not the voluntary-involuntary rule reaches removal premised on CAFA jurisdiction.

In the absence of such authority, the Court concludes the rule should not apply here. As one district court has pointed out, "applying the voluntary-involuntary rule to [a CAFA case] would allow plaintiffs to avoid federal jurisdiction under CAFA based on their designation of the parties and preclude removal by proper intervenors, including necessary parties." *Wellons v. PNS Stores, Inc.*, 2019 WL 2099922, at *3 (S.D. Cal. May 14, 2019). Such a result, in certain cases, could contravene CAFA's objective—to ensure "[f]ederal court consideration of interstate cases of national importance." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013) (citation omitted). Finally, CAFA contains exceptions to its reach to ensure that localized controversies remain in state court. *See Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 569–70 (5th Cir. 2011). These exceptions "draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to the state." *See id.* (citation omitted). The Court declines to interfere with this balance by applying the voluntary-involuntary rule here.

    4.    <u>ADT has satisfied CAFA's amount-in-controversy requirements.</u>

The Court now addresses whether CAFA's amount-in-controversy requirements are satisfied. "[A] putative mass action removed under CAFA must be remanded if the defendants cannot establish that (1) the aggregate amount in controversy exceeds $5 million and (2) at least one plaintiff's claim satisfies the $75,000 individual amount in controversy." *Robertson v. Exxon Mobil*

*Corp.*, 814 F.3d 236, 239 (5th Cir. 2015) (citation omitted). Because Plaintiffs contest whether the amount-in-controversy requirements are satisfied, *see* Doc. 9-1, Pls.' Mot. Br., 7, ADT must prove, by a preponderance of the evidence, that the requirements are satisfied. *See Robertson*, 814 F.3d at 240. ADT may meet this burden "by showing that the amount is 'facially apparent' from the plaintiffs' pleadings alone, or by submitting summary-judgment-type evidence." *Id.* (citations omitted). The relevant inquiry is what Plaintiffs are "claiming (and thus the amount in controversy between the parties), not whether [Plaintiffs are] likely to win or be awarded everything [they] seek[]." *Id.* (citation omitted). Further, the Court is free "to make common-sense inferences about the amount put at stake by the injuries" claimed. *Id.*

As a preliminary matter, the Court must resolve whether Plaintiffs do indeed seek damages in this action. Although Plaintiffs claim they are not seeking monetary relief, *see* Doc. 9-1, Pls.' Mot. Br., 7, ADT contends that they are, because their petition seeks numerous categories of damages. Doc. 18, Def.'s Resp., 8 (citing Doc. 2, Def.'s App., 13–14). Plaintiffs wholly fail to reconcile these requests for damages with their contention that they seek only injunctive relief against Aviles. *See* Doc. 20, Pls.' Reply, 7. Given that Plaintiffs' petition plainly seeks damages and they fail to disclaim these requests, the Court proceeds under the assumption that Plaintiffs seek an award of damages.

To satisfy the two amount-in-controversy requirements, ADT emphasizes the numerous categories of damages sought by Plaintiffs. Doc. 18, Def.'s Resp., 8 (citing Doc. 2, Def.'s App., 16). Indeed, the petition states that "Plaintiffs, on behalf of themselves and those similarly situated," seek: "money damages"; "actual damages, including direct and indirect damages"; "consequential damages"; and "exemplary and punitive damages[.]" Doc. 2, Def.'s App., 15–16. They further specify damages for "[p]ain and suffering[,]" "[m]ental anguish[,]" "[l]oss of earning capacity[,]" and "[l]oss

of use and enjoyment of . . . home in the past and future[,]" among other categories. *Id.* at 14. Further, as ADT notes, Plaintiffs state in their petition that their proposed class includes at least 220 members—but likely "hundreds more" individuals. *See id.* at 54. ADT also points out that similar class actions arising from Aviles's conduct have involved over $5,000,000. Doc. 18, Def.'s Resp., 9. ADT also explains that another family seeking to recover for Aviles's conduct seeks over $1,000,000 in damages. *Id.* at 10 (citation omitted).

The Court concludes ADT has satisfied the $5,000,000 amount-in-controversy requirement. As an initial matter, given that the other class actions referenced by ADT involve classes that are defined more broadly than the proposed class here, the Court finds them to be of limited relevance in determining the amount in controversy. *See* Am. Compl. at 14, *Doty v. ADT, LLC*, Case No. 0:20-cv-60972-AHS (S.D. Fla. July 16, 2020), ECF No. 47 (proposing a nationwide class); Am. Compl. at 12–13, *Preddy v. ADT, LLC*, Case No. 0:20-cv-60971-AHS (S.D. Fla. July 24, 2020), ECF No. 31 (same). In any event, Plaintiffs' proposed class—by their own pleadings—encompasses at least 220 individuals. Thus, even if the class were capped at 220 individuals and each class member seeks only $25,000 in relief, Plaintiffs' action is well above the $5,000,000 threshold.

And here, it is more likely than not that each class member seeks at least $25,000. First, Plaintiffs allege a disturbing violation of privacy by Aviles. Plaintiff Madison, for example, alleges Aviles accessed her security cameras 139 times over a thirty-day period. Doc. 2, Def.'s App., 11. Though the class members may not ultimately recover $25,000 each, it is more likely than not that each *claims* at least $25,000 for this troubling intrusion. *See Robertson*, 814 F.3d at 240 (citation omitted) (permitting common-sense inferences regarding amount in controversy). Indeed, one family of five that would fall within Plaintiffs' proposed class filed an action against ADT in Texas state

court based on Aviles's conduct, and they seek over $1,000,000 in damages. App. at 21, *ADT LLC v. Richmond*, 4:20-cv-0759-O (N.D. Tex. July 21, 2020), ECF No. 1-1. Further, "Plaintiffs introduced no evidence of the amount in controversy themselves" to suggest that this amount is atypical of the relief sought by each class member. *Carter v. Westlex Corp.*, 643 F. App'x 371, 375 (5th Cir. 2016) (per curiam). Accordingly, the Court holds that ADT has shown, by a preponderance of the evidence, that Plaintiffs' class collectively claims over $5,000,000 in this civil action.

Likewise, ADT has met its burden to show that at least one plaintiff seeks over $75,000. Namely, Plaintiff Madison, as detailed above, seeks to recover numerous types of damages for Aviles's viewing of her residence 139 times over a thirty-day period. Doc. 2, Def.'s App., 11, 14, 16. Though she avoids putting a number on her claim, it is more likely than not that she seeks more than $75,000. As noted above, a family of five suing based on similar conduct—Aviles's accessing of their security cameras 117 times over a forty-two day period—seeks over $1,000,000 in damages. App. at 21–22, *ADT LLC v. Richmond*, 4:20-cv-0759-O (N.D. Tex. July 21, 2020), ECF No. 1-1. Though Plaintiff Madison may not ultimately *recover* over $75,000, it is more likely than not that she seeks to recover over $75,000 for Aviles's intrusion. *See Robertson*, 814 F.3d at 240 (citation omitted). The Court thus holds ADT has satisfied the second amount-in-controversy requirement.

Overall, Plaintiffs' arguments against removal are unavailing, and the only prerequisite to CAFA jurisdiction challenged by Plaintiffs—the amounts in controversy—is met. As for the unchallenged CAFA requirements, they too are satisfied: Plaintiffs are Texas citizens, and ADT is a citizen of Delaware and Florida. Thus, the parties are minimally diverse. *See Dart Cherokee*, 574 U.S. at 84–85 (citations omitted). Further, as noted above, Plaintiffs' proposed class exceeds 100 individuals. Thus, the Court has jurisdiction under CAFA, *see id.*, and removal was proper.

B.      *Because the Home-State Exception Applies Here, the Court Remands the Case.*

Now that the Court has concluded it has jurisdiction under CAFA, it must determine whether an exception to CAFA applies. Under the home-state exception to CAFA, the Court must remand a case removed under CAFA if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). Though "not truly jurisdictional," the exception's application "require[s] abstention from the *exercise* of jurisdiction" by the district court. *Watson*, 821 F.3d at 639 (emphasis in original) (citation omitted). As noted above, exceptions like this one are "designed to draw a delicate balance between making a federal forum available to genuinely national litigation" and permitting a state court to keep a case "strongly linked to that state." *Hollinger*, 654 F.3d at 570 (citation omitted). Plaintiffs bear the burden of showing, by a preponderance of the evidence, that the home-state exception applies. *Frazier v. Pioneer Ams. LLC*, 455 F.3d 542, 546 (5th Cir. 2006); *Hollinger*, 654 F.3d at 571 (citation omitted).

Here, the parties appear to agree that two-thirds of the proposed plaintiff class are citizens of Texas. *See* Doc. 9-1, Pls.' Mot. Br., 9; Doc. 18, Def.'s Resp., 9; Doc. 20, Pls.' Reply, 8. Indeed, Plaintiffs' proposed class encompasses only Texas citizens and residents. *See* Doc. 2, Def.'s App., 6–7. Thus, the Court concludes that this requirement is satisfied. Further, there is no dispute that Aviles is a Texas citizen. *See generally* Doc. 9-1, Pls.' Mot. Br.; Doc. 18, Def.'s Resp. Accordingly, to determine whether the home-state exception applies, the Court need only decide whether Plaintiffs have demonstrated, by a preponderance of the evidence, that ADT—which is not a Texas citizen—is not a "primary defendant" in this case.

The Court holds Plaintiffs have done so. The Fifth Circuit has rarely addressed the "primary

defendant" requirement. *See Watson*, 821 F.3d at 641 ("Only one Fifth Circuit case has applied this requirement."). First, in *Hollinger*, the Fifth Circuit examined whether the home-state exception applied to a case against two groups of defendants: (1) insurance companies that "allegedly issued policies in violation of the Texas Insurance Code[,]" and (2) reinsurers that "allegedly 'participated in and permitted such violations.'" *Watson*, 821 F.3d at 641 (quoting *Hollinger*, 654 F.3d at 568). The Fifth Circuit held that the former group was comprised of "primary defendants, because all putative class members . . . ha[d] claims against [them], and as the entities that issued the insurance policies, [they had] a primary role in the alleged" Texas Insurance Code violations. *Hollinger*, 654 F.3d at 572.

Next, in *Watson*, the Fifth Circuit considered whether private entities were "primary defendants" in a lawsuit challenging the constitutionality of municipal traffic ordinances, as well as the statutory provision authorizing these ordinances. *See* 821 F.3d at 637, 641. The named plaintiff in *Watson* received a traffic citation "after his vehicle was photographed running a red light[,]" despite that the plaintiff was not driving his vehicle at the time of the photograph. *Id.* at 637. He thereafter filed a class action challenging the Texas statutes authorizing municipalities to use "red light cameras" and the several municipal ordinances enacted under these statutes. *See id.* He named the state of Texas, fifty-three Texas municipalities, and a handful of private companies that administered the "red light camera programs" as defendants. *Id.*

In examining whether the home-state exception applied to the action in *Watson*, the Fifth Circuit held that the private companies were not primary defendants. *Id.* at 641. According to the Fifth Circuit, "[t]he phrase 'primary defendants' indicates a chief defendant or chief class of defendants." *Id.* In concluding that the private companies did not fall within this category, the Fifth Circuit acknowledged that all plaintiffs would have claims "against at least one of the private

- 14 -

companies." *Id.* But given that the lawsuit was premised on the unconstitutionality of certain Texas provisions, it was the state and its municipalities—the defendants that enacted the laws—that "played the primary role." *Id.* The claims against the private companies, the Fifth Circuit explained, were "expressly contingent on a threshold finding that the challenged legislative scheme [was] unconstitutional." *Id.* Accordingly, the Fifth Circuit held that the private companies were not primary defendants and applied the home-state exception. *Id.*

Similarly, here, ADT is not a primary defendant. Most importantly, Plaintiffs have not even asserted any claims against ADT or otherwise named ADT as a defendant in this case. *See generally* Doc. 2, Def.'s App., 6–16. This fact alone renders the Court doubtful that ADT is a primary defendant. *See Rasberry v. Capitol Cnty. Mut. Fire Ins. Co.*, 609 F. Supp. 2d 594, 606 (E.D. Tex. 2009) (concluding a defendant was not a primary defendant where "[n]o class allegation whatsoever ha[d] been lodged against" that defendant); *see also In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 564 F.3d 75, 79 n.4 (1st Cir. 2009) (rejecting argument that the court should "consider unnamed defendants against whom the class could pursue a claim arising from the same core set of facts" when determining the primary defendants).

But even assuming that Plaintiffs' petition, in practical effect, seeks damages from ADT, any claims by Plaintiffs against ADT would be contingent upon Aviles's liability to Plaintiffs. Specifically, ADT suggests that Plaintiffs "would eventually attempt to hold ADT responsible" for Aviles's actions based on vicarious liability. Doc. 18, Def.'s Resp., 13. Thus, under ADT's theory, if Aviles is not liable for his intrusion upon seclusion, Plaintiffs will not recover against ADT. Accordingly, like the claims in *Watson* against the private companies, Plaintiffs' "claims" against ADT depend on recovery against another defendant—Aviles. *See also, e.g., Hunter v. City of Montgomery*, 859 F.3d 1329, 1337

(11th Cir. 2017) (holding that where a defendant's liability was limited to vicarious or secondary liability, it was not a primary defendant).

Finally, the basis for Plaintiffs' claimed harm is rooted in Aviles's conduct—his improper access of ADT security cameras to spy upon Plaintiffs. *See* Doc. 2, Def.'s App., 8. ADT's involvement in this matter, to the extent it is involved, would be due to its employment of Aviles—not its decisions or conduct. *See generally id.* at 6–16. Thus, ADT is not a defendant that "played the primary role" here. *See Watson*, 821 F.3d at 641. As a result, the Court holds that ADT is not a primary defendant.

In sum, Plaintiffs have met their burden of showing that the home-state exception applies to this case. Indeed, given that this class action "does not appear to be national litigation, . . . the spirit and intent of CAFA are not fulfilled" by retaining the case in this Court. *See Hollinger*, 654 F.3d at 574. In any event, application of the home-state exception mandates remand to state court.[3] *Id.* at 570 (citing § 1332(d)(4)(B)). The Court thus **GRANTS** Plaintiffs' motion to remand (Doc. 9).

## IV.

## CONCLUSION

For the reasons explained above, the Court **GRANTS** Plaintiffs' motion to remand (Doc. 9) and **REMANDS** this case to the 191st Judicial District Court of Dallas County, Texas.

---

[3] Because the Court applies the home-state exception, it need not consider whether any other CAFA exception applies here.

SO ORDERED.

SIGNED: June 4, 2021.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE